UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHNSON DAIRY, LLC | ) | Bankruptcy Case No. 09-10201-SBB |
| aka JF Cattle Co., LLC, | ) | Chapter 11 |
|    Debtor. | ) | |
| | ) | |
| EIN No.: 87-0703859 | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | |
| JOHN D. JOHNSON | ) | Bankruptcy Case No. 09-10203-SBB |
| | ) | Chapter 11 |
|    Debtor. | ) | |
| | ) | **Jointly administered under** |
| | ) | **Case No. 09-10201-SBB** |
| | ) | |

**SUBMISSION OF EXHIBIT E TO ACCOMPANY SECOND AMENDED DISCLOSURE
STATEMENT FILED JUNE 11, 2010**

COMES NOW, the Debtor, Johnson Dairy, LLC, by and through its attorneys, Kutner Miller Brinen, P.C., and hereby submits Exhibit E to accompany the Second Amended Disclosure Statement filed June 11, 2010.

DATED: June 15, 2010

Respectfully submitted,

By:    */s/Lee M. Kutner*
       Lee M. Kutner #10966
       **KUTNER MILLER BRINEN, P.C.**
       303 East 17th Avenue, Suite 500
       Denver, CO 80203
       Telephone:  (303) 832-2400
       Telecopy: (303) 832-1510
       lmk@kutnerlaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that on this 15th day of June, a true and correct copy of the foregoing **SUBMISSION OF EXHIBIT E TO ACCOMPANY SECOND AMENDED DISCLOSURE STATEMENT FILED JUNE 11, 2010** was deposited in the United States mail, postage prepaid, addressed to the following:

Joanne C. Speirs, Esq.
United States Trustee's Office
999 18th Street
Suite 1551
Denver, CO 80202

James T. Markus, Esq.
Jeffery O. McAnallen, Esq.
Donald D. Allen, Esq.
Steven R. Rider, Esq.
Jennifer M. Salisbury, Esq.
Block Markus & Williams, LLC
1700 Lincoln Street
Suite 4000
Denver, CO 80203

Jeffrey A. Weinman, Esq.
William A. Richey, Esq.
Weinman & Associates, P.C.
730 17th Street
Suite 240
Denver, CO 80202-3506

Harvey Sender, Esq.
David Warner, Esq.
Sender & Wasserman, P.C.
1660 Lincoln Street
Suite 2200
Denver, CO 80264

David P. Hutchinson, Esq.
Darrell G. Waas, Esq.
950 17th Street
Suite 1600
Denver, CO 80202

Peter J. Lucas, Esq.
Garry Appel, Esq.
Leland Matthew Johnson, Esq.
1917 Market Street
Denver, CO 80202

Dennis Bartlett, Esq.
John A. O'Brien, Esq.
1600 Broadway
Suite 1600
Denver, CO 80202

Caroline C. Fuller, Esq.
Fairfield & Woods
1700 Lincoln Street
Suite 2400
Denver, CO 80203

Lars H. Fuller, Esq.
Baker & Hostetler, LLP
303 East 17th Avenue
Suite 1100
Denver, CO 80203

John O'Brien, Esq.
Kerr Brosseau Bartlett O'Brien, LLC
1600 Broadway, Suite 1600
Denver, CO 80202

M. Frances Cetrulo, Esq.
Berenbaum, Weinshienk & Eason, P.C.
370 Seventeenth Street
Suite 4800
Denver, CO 80202

John S. Finn, Esq.
Stettner Miller, P.C.
1050 17th Street
Suite 700
Denver, CO 80265-2008

Michael D. Gordon, Esq.
Briggs and Morgan, P.A.
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Kent H. Borges, Esq.
Sparks Willson Borges Brandt & Johnson, P.C.
24 South Weber Street, Suite 400
P.O. Box 1678
Colorado Springs, CO 80903

Craig Laufert
Agland, Inc.
P.O. Box 338
Eaton, CO 80615

David Dyer
TLC Farms, Inc.
28248 Weld County Road 74
Eaton, CO 80615

Anne Feeney
The Western Sugar Cooperative
7555 East Hampden Avenue
#600
Denver, CO 80231

Brad Olson
Pacific Ag Products
31375 Great Western Drive
Windsor, CO 80550

Robert L. Brown
Dairy Specialists, LLC
3309 Empire Street
Evans, CO 80620

Heather Roles
A-1 Organics, Inc.
16350 WCR 76
Eaton, CO 80615

Bob Pemberton
Northern Feed and Bean
P.O. Box 149
Lucerne, CO 80646

Doug White
High County Enterprises
P.O. Box 1201
La Veta, CO 81055

Steve Olander
Olander Farms
3853 East County Road 14
Loveland, CO 80537

Matthew D. Skeen, Esq.
Benjamin R. Skeen, Esq.
Skeen & Skeen, P.C.
P.O. Box 218
707 Brownell Street
Georgetown, CO 80444

Harvey Sender, Esq.
David V. Wadsworth, Esq.
David Warner, Esq.
Sender & Wasserman, P.C.
1660 Lincoln Street
Suite 2200
Denver, CO 80264

Bart B. Burnett, Esq.
Horowitz & Burnett, P.C.
1660 Lincoln Street
Suite 1900
Denver, CO 80264

Eric B. Liebman, Esq.
Matthew J. Ochs, Esq.
Moye White, LLP
1400 16th Street
6th Floor
Denver, CO 80202-1473

Terry Ehrlich, Esq.
Arnold & Arnold, LLP
7691 Shaffer Parkway
Suite A
Littleton, CO 80127

Bob Cannon
24275 County Road 64
Greeley, CO 80631-9672

Thomas C. Bell, Esq.
1550 17th Street
Suite 500
Denver, CO 80202

H. Raymond Hunter,
Emerald Agriculture, LLC
1004 North Plum Grove Road
#302
Schaumburg, IL 60173

Jeff Joseph, Esq.
Joseph Law Firm, P.C.
12203 East 2nd Avenue
Aurora, CO 80011

Paul Mulder, Esq.
Genske, Mulder & Co., LLP
9500 Haven Avenue
2nd Floor
Ranco Cucamonga, CA 91730

Patrick D. Vellone, Esq.
1600 Stout Street
Suite 1100
Denver, CO 80202

Timothy J. Lamb, Esq.
Jared C. Walters, Esq.
Timothy J. Lamb, P.C.
1401 17th Street
Suite 330
Denver, CO 80202

Steven E. Abelman, Esq.
410 Seventeenth Street
22nd Floor
Denver, CO 80202

The Yale Group, Inc.
3773 Cherry Creek North Drive
Suite 575
Denver, CO 80209

John C. McClure, Esq.
1401 17th Street
Suite 660
Denver, CO 80202

David S. Oppenheim, Esq.
7700 East Arapahoe Road
Suite 350
Englewood, CO 80112-6111

Matthew A. Gold, Esq.
Argo Partners
12 West 37th Street
9th Floor
New York, NY 10018

Kelsey J. Smith, Esq.
425 West Mulberry Street
Suite 112
Fort Collins, CO 80521

Kent A. Naughton, Esq.
822 7th Street
Suite 760
Greeley, CO 80631


*/s/ Angela R. Upton*
Angela R. Upton

June 3, 2010

Mr. Chris Hawkins
Sr. Lending Services Executive
AgStar Financial Services, FLCA
P.O. Box 4249
Mankato, MN 56002-4249

        Re:  AgStar Financial Services, FLCA/New Frontier Bank Participation

Dear Mr. Hawkins:

        We have acted as special counsel to Johnson Dairy, LLC and John Johnson
(collectively "Johnson") solely to provide an opinion in connection with a loan between
John Johnson and Johnson Dairy, as Borrower, and AgStar Financial Services, FLCA, as
Lender.   We have not represented the Borrower on an ongoing or other basis.

        We have reviewed the following documents listed in paragraphs a. through ii. below:

        a.      Schneider Feed Lot plat, Recorded on February 12, 1982 at Reception No.
                01882948, Weld County Clerk and Recorder;

        b.      Resolution of the Board of County Commissioners of Weld County,
                Colorado, Re: Approval of Use by Special Review for a Livestock
                Confinement Operation for Cattle – H. A. Schneider (Nov. 17, 1982);

        c.      USR-529:82:44 plat, recorded January 20, 1983 at Reception No. 01914983,
                Weld County Clerk and Recorder;

        d.      Resolution of the Board of County Commissioners of Weld County,
                Colorado Re: Approve Site Specific Development Plan and Use by Special
                Review Permit #1282 – John Johnson (Oct. 25, 2000);

        e.      JF Cattle – USR 1282 – Current Site Layout & Vicinity Map, Recorded on
                May 18, 2001 at Reception No. 2849486, Weld County Clerk and Recorder;

        f.      Resolution of the Board of County Commissioners of Weld County,
                Colorado Re: Approve Site Specific Development Plan and Amended Use by
                Special Review Permit #1282 – John Johnson (June 25, 2003);

**EXHIBIT E**

Chris Hawkins
June 3, 2010
Page 2 of 18

g.      JF Cattle, AMUSR 1282 – Site Plan, Recorded Nov. 6, 2003 at Reception No. 3124257, Weld County Clerk and Recorder;

h.      Notice of Violation/Cease and Desist Order/Clean-Up Order Number: CO051014-1 (Oct. 14, 2005);

i.      Application to be Certified Under the General Permit for Animal Feeding Operations, Colorado Discharge Permit No. COA-931000, signed by John Johnson on October 26, 2006;

j.      Permit Application COA-931039 Request for Additional Information (Nov. 10, 2006);

k.      Resolution of the Board of County Commissioners of Weld County, Colorado Re: Approve Site Specific Development Plan and Second Amended Use by Special Review Permit #1282 – John Johnson (Dec. 20, 2006);

l.      Response to Request for Additional Information (Dec. 27, 2006);

m.      Johnson Dairy/JF Cattle East, CDPS Permit Number COA-93100, Certification Number COA-931039 (Effective Jan. 31, 2007);

n.      August 16, 2007 Letter from Colorado Department of Public Health and Environment ("CDPHE"), Environmental Agriculture Program  ("EAP") to John D. Johnson Re:  Follow up of Investigation of Reported Discharge;

o.      Compliance Order on Consent No. CC-071022-1, CDPHE, Water Quality Control Division ("WQCD") (Oct. 22, 2007);

p.      October 23, 2007 Letter Re: Compliance Order on Consent, Number: CC-071022-1 from CDPHE, WQCD to John Johnson;

q.      Compliance Advisory (Jan. 11, 2008);

r.      February 8, 2008 Letter from AGPROfessionals LLC ("AGPRO") to EAP Re:  Johnson Dairy Compliance Advisory, Job Number 2000-20;

s.      Registration Form for Non-Permitted Large Concentrated Animal Feeding Operations (CAFOs) – JF Cattle East (Johnson Dairy) (Feb. 19, 2008);

t.      Registration Form for Non-Permitted Large Concentrated Animal Feeding Operations (CAFOs) – JF Cattle West (Schnieder) (Feb. 19, 2008);

Chris Hawkins
June 3, 2010
Page 3 of 18

u.    Preliminary Application to be Certified Under a General Permit for Concentrated Animal Feeding Operations (Permit No. COA-931000)(Feb. 28, 2008);

v.    Suspension of Certification, Certification No. COA-931039 (March 14, 2008);

w.    April 2, 2008 Letter from CDPHE, WQCD to John Johnson Re: Closure of Notice of Violation/Cease and Desist Order, Number: CO-051014-1, Closure of Compliance Order on Consent, Number: CC-071022-1, Closure of Order for Civil Penalty, Number: CP-080207-1;

x.    December 3, 2008 Letter from Weld County Environmental Health Services to William R. Surhre Re: odor, dust and fly complains;

y.    JF Cattle West Nutrient Management Plan (Feb. 26, 2009);

z.    March 11, 2009 Letter from EAP to John D. Johnson Re: Comments on Permit Amendment Action Plan;

aa.   Johnson Dairy/JF Cattle Nutrient Management Plan (March 31, 2009);

bb.   Resolution of the Board of County Commissioners of Weld County, Colorado Re: Third Amended Special Review Permit #1282 – John and Dorothy Johnson, (Aug. 19, 2009);

cc.   October 5, 2009 Letter from AGPRO to EAP, CDPHE, Re: Johnson Dairy, 23016 Weld County Road 74, Eaton, CO 80615, Amended CAFO Permit Action Plan for COA0931039;

dd.   Notice of Certification Termination (COA-931039) (Oct. 6, 2009);

ee.   October 6, 2009 Letter from EAP to John D. Johnson Re: Notice of Certification Termination (COA-931039);

ff.   JF Cattle West Environmental Management Notebook;

gg.   JF Cattle Environmental Management Notebook;

hh.   Records of the Weld County Planning Department Re: 2d AMUSR#1282; and

Chris Hawkins
June 3, 2010
Page 4 of 18

      ii.      Electronic records of the Weld County Clerk and Recorder and the Weld County Assessor.

Collectively, the documents listed in paragraphs a through ii. above are the "Documents."

In rendering the opinions expressed below, we have, with your consent, assumed that the signatures of individuals signing all Documents are genuine, all Documents submitted to us as originals or duplicate originals are authentic, and all Documents submitted to us as copies, whether certified or not, conform to the authentic original documents. Additionally, we have, with your consent, assumed and relied upon the following:

      A.      The accuracy and completeness of all certificates and other statements and records reviewed by us, and the accuracy and completeness of all representations, warranties, schedules and exhibits contained in the Documents, with respect to the factual matters set forth therein;

      B.      All parties to the Documents have full power and authority to execute, deliver and perform their duties under such Documents, and such execution, delivery and performance are proper undertakings by such parties, are permitted by applicable law, and are within the scope of their respective enumerated powers, and all such Documents have been duly authorized, executed and delivered by such parties, and all of the proceedings and undertakings which are necessary in order for such parties to execute and deliver such Documents and perform their duties thereunder have been properly carried out in accordance with the requirements of applicable law;

      C.      Each party to the Documents is duly organized, validly existing and in good standing under the laws of all jurisdictions where it is organized, conducting its business or otherwise required to be qualified;

      D.      There are no agreements or understandings, either written or oral, between or among any of the parties to the Documents, or any third parties, other than those expressed in the Documents;

      E.      Any agreement or order contained in the Documents constitutes the legal, valid and binding obligation of each party thereto enforceable against such party in accordance with its terms; and

      F.      Any action by a governmental entity confirms that the conditions precedent to that action were completed.

Whenever our opinion with respect to the existence or absence of facts is indicated to be based on our knowledge, we are referring to the conscious awareness of facts or other information of the attorneys who were actively involved in preparing this opinion letter;

Chris Hawkins
June 3, 2010
Page 5 of 18

primarily responsible for providing the response concerning a particular opinion issue or confirmation; or signing this opinion letter. Except as expressly set forth herein, we have not undertaken an independent investigation, examination or inquiry to determine the existence or absence of any facts.

We express no opinion concerning any matters respecting or affected by any laws other than laws that a lawyer in Colorado exercising customary professional diligence would reasonably recognize as being directly applicable to the Borrower or its operations. In rendering the opinions included herein, we have relied upon the factual assumptions contemplated under customary practice or set forth elsewhere herein, the factual representations made in the Documents and upon other factual representations made to us by Johnson and its consultants, AGPROfessionals, LLC, and by employees of the Weld County Planning Department, the Weld County Department of Public Health and Environment and the Colorado Department of Public Health and Environment.

Based upon our examination of the Documents, and subject to the qualifications hereinafter set forth, it is our opinion that:

## 1.      Regulation 81 Non-Permitted CAFO

•        The Colorado Department of Public Health and Environment ("CDPHE"), Water Quality Control Commission ("WQCC") Animal Feeding Operations Control Regulation 5 CCR 1002-81 ("Regulation 81") allows Concentrated Animal Feeding Operations to operate without a Colorado Discharge Permit System permit so long at they (a) do not discharge to waters of the U.S. and (b) do not discharge from the production area to surface water, except from a precipitation event when the production area has been designed, constructed, operated and maintained to contain all manure and wastewater, including runoff and precipitation from a twenty-five year/twenty-four hour storm or from a Chronic Storm (a series of storms over a ten-day period yielding total precipitation with a probability of recurring once every ten years), whichever is greater. In addition, land application of manure and wastewater that results in a discharge to waters of the U.S. due to an agricultural stormwater discharge is not considered a discharge so long as the CAFO complies with land application requirements of Regulation 81.6(2)(a-d).

•        Regulation 81 requires non-permitted CAFOs to register with the Colorado Water Quality Control Division ("WQCD") and to develop and keep the following records on-site:

        •        The Facility Management Plan;

        •        Pond depth logs, which must be kept for five years (commencing May 30, 2011);

Chris Hawkins
June 3, 2010
Page 6 of 18

- • Pond liner inspection records, which must be kept for five years;

- • Solid and liquid manure and soil sampling records, which must be kept for five years (commencing February 27, 2009); and

- • Land application records (application rate calculations and actual application), which must be kept for five years (commencing February 27, 2009).

***DAIRY FACILITY***

- • In February 2008 Johnson registered the "Dairy Facility" located at 23016 Weld County Road 74, Eaton, Colorado 80615 (also referred to as "Johnson Dairy," "JF Cattle," "JF Cattle East" and "Johnson Dairy/JF Cattle") with the WQCD as a non-permitted large CAFO pursuant to Regulation 81.

- • The Dairy Facility registration reported a maximum of 10,000 mature dairy cows confined in the production area.

**OPINIONS:**

a.       The Dairy Facility may operate without a CAFO Discharge Permit as a non-permitted large CAFO.

b.       The Dairy Facility is in compliance with Regulation 81, except as follows:

i.       For two impoundments, the seepage rate certifications do not identify the liner materials, although the impoundments have been certified to meet the leak rate standard of $1 \times 10^{-6}$.

ii.       Pond liner inspection logs are missing for the first three weeks of July and for September 2007;

iii.       Sampling data for compost and liquid manure is missing for 2009; and

iv.       The portions of the Facility Management Plan required to be in place by May 30, 2011 are incomplete.

c.       To bring the Dairy Facility into compliance with Regulation 81, Johnson must:

i.       Continue to keep records of weekly pond depth readings, weekly pond liner inspections, annual sampling of manure and wastewater, and land

Chris Hawkins
June 3, 2010
Page 7 of 18

application compliance;

        ii.     Revise leakage certification for the Dairy Facility ponds to identify pond liner materials;

        iii.     Upon completion of Pond #7, revise the Standard Operating Procedure for Pond Cleaning and Liner Protection to include Pond #7 and, within 30 days following completion of construction, must submit the revised SOP to WQCD for approval;

        iv.     Upon completion of Pond #7, obtain a certification by a professional engineer confirming that the pond liner meets the seepage rate standards of Section 81.8(2) and identifying the liner material. That certification must be submitted to WQCD within 30 days after completion of construction;

        v.     Upon completion of Pond #7, update information demonstrating compliance with depth marker, conveyance structure and set back requirements, as required by Section 81.6(3)(c); and

        vi.     Prior to May 30, 2011, comply with Section 81.6(1) ("Surface water protection elements – Production Area") of Regulation 81, unless the Dairy Facility is covered under a CAFO Discharge Permit.

## *HEIFER FACILITY*

•     In February 2008 Johnson registered the "Heifer Facility," located at 34534 WCR 33, Greeley, Colorado 80631, (also referred to as "JF Cattle West" or "Schnieder") as a non-permitted large CAFO facility pursuant to Regulation 81.

•     The Heifer Facility registration reported a maximum of 10,000 dairy heifers in the confined production area.

### OPINIONS:

        a.     The Heifer Facility may operate 10,000 head of cattle without a CAFO Discharge Permit as a non-permitted CAFO.

        b.     The Heifer Facility is in compliance with Regulation 81, except as follows:

        i.     The impoundment certifications do not identify the liner materials, although the impoundments have been certified to meet the leak rate standard of $1 \times 10^{-6}$;

Chris Hawkins
June 3, 2010
Page 8 of 18

   ii.  Weekly pond liner inspection logs are missing for the second week of June through December 2007, January through September 2008, and February 2009;

   iii.  Solid manure sampling data is missing for 2009; and

   iv.  The portions of the Facility Management Plan required to be in place by May 30, 2011 are incomplete.

 c.  To bring the Heifer Facility into compliance with Regulation 81, Johnson must:

   i.  Continue to keep records of weekly pond depth readings, weekly pond liner inspections, annual sampling of manure and wastewater and land application compliance.

   ii.  Revise leakage certification for the Heifer Facility ponds to identify pond liner materials.

   iii.  Prior to May 30, 2011, Johnson must comply with Section 81.6(1) ("Surface water protection elements – Production Area") of Regulation 81.

**2.  Regulation 61 – CAFO Discharge Permit**

•  Water Quality Control Commission Discharge Permit System Regulations ("Regulation 61") include specific permitting obligations for Concentrated Animal Feeding Operations ("CAFOs") that discharge to waters of the U.S.

•  In 2006, Johnson Dairy/JF Cattle East applied for certification under the Colorado Discharge Permit System ("CDPS") CAFO General Permit (COG-931000). The application was for 11,240 mature dairy cows with five retention ponds, 110 acres of land application sites owned by the applicant, 12,255,143 gallons of annual estimated wastewater and 264,618 tons of annual estimated manure.

•  Certification No. COA-931039, confirming coverage under CDPS General Permit COA-931000 was issued to the Dairy Facility in January 2007 for a confinement capacity of 11,240 mature dairy cows.

•  In October 2007 Johnson Dairy, LLC entered a Compliance Order on Consent with the Colorado Department of Public Health and Environment ("CDPHE"), Water Quality Control Division ("WQCD") regarding an alleged release in 2005 of wastewater to a state water. Pursuant to the Compliance Order on Consent, Johnson Dairy agreed to pay a fine of $10,500. By letter dated April 2, 2008, WQCD confirmed that Johnson Dairy had met its obligations under the Compliance Order on Consent, the related Notice of Violation/Cease

Chris Hawkins
June 3, 2010
Page 9 of 18

and Desist Order and the related Order for Civil Penalty, and closed the case.

•       In July 2007 a berm constructed in relation to new impoundment construction work was breached during a heavy rain.  The Environmental Agriculture Program of CDPHE ("EAP") investigated the incident and, in January 2008, issued a Compliance Advisory.  The Compliance Advisory concluded that run-on diversion structures had not been designed and constructed appropriately to divert run-on stormwater away from production areas; design calculations, drawings and specifications for that structure did not exist; Johnson lacked an accurate site plan that included the expanded composting area and related berm; and that, according to weekly depth logs, depth markers at one or more ponds had been down for a combined total of seven weeks from February 2007 through week three of September 2007. The compliance advisory reported that the EAP could not find conclusive evidence that fugitive wastewater entered waters of the U.S.   The Compliance Advisory required submission, by February 8, 2008, of engineering for the run-on diversion structure or a timeline for completing that engineering and providing evidence of construction, and for providing other information regarding run-on structures that the EAP should consider.  The Compliance Advisory also required submission, by February 29, 2008, of an application to amend the discharge permit to include the additional production area.

•       On February 8, 2008 AGPROfessionals, LLC ("AGPRO") submitted a letter to the EAP stating that the existing run-on diversion structure (the county road drainage ditch) would not satisfactorily divert run-on water away from the expanded production area. Therefore, Johnson would capture this run-on in a new expanded pond.  AGPRO also reported that an application to amend the permit, which would include the new pond, would be submitted by February 29, 2008, but it would not include a signed Appendix A (engineer stamped confirmation of compliance with Regulation 61) because construction would not be completed by that date and, therefore, as-built drawings could not be prepared and leak rate testing could not be completed.  AGPRO confirmed that the existing ponds had sufficient capacity to hold wastewater from the production area, but not run-on from west Weld County Road 47.  Therefore, existing run-on diversion measures would remain in place until completion of the new pond.

•       On February 28, 2008 Johnson Dairy/JF Cattle East submitted a preliminary application for coverage under CAFO General Permit No. COG-931000 due to expansion of the wastewater capacity to handle stormwater run-on issues and an expanded production area.  The preliminary application was for 18,000 milking cows; 1,500 dry cows and 2,500 heifers.  The preliminary application stated that 196 acres for land application were owned or under the control of applicant.   It also stated that 14.5 million gallons of process wastewater would be produced annually, with 50% released to third parties   Annual manure production was estimated at 94,000 tons per year at 46% moisture.

•       Permit Certification No. COA-931039 was suspended on March 14, 2008 due to the

Chris Hawkins
June 3, 2010
Page 10 of 18

failure to submit engineering information regarding the run-on diversion structure by February 8, 2008 and the failure to submit a complete application to amend the permit. The suspension was effective until issuance of an amended permit certification in response to a complete application to amend the permit, which had to be filed by February 27, 2009.

•       By letter dated March 11, 2009, the EAP granted Johnson additional time to construct or improve capabilities for surface run-on, to dewater and evaluate Pond #7 construction and design and to submit a complete permit amendment application. The letter also required diversion of surface water away from Pond #7, which was under construction, establishment of a dewatering system for additional land application sites, dewatering of the existing impoundments and maintenance of capacity for a 25-year/24-hour storm event.

•       By letter dated October 5, 2009, AGPRO confirmed that perimeter diversions had been improved to reduce the volume of run-on water, that Pond #7 had been dewatered, that surface water had been diverted away from Pond #7, that a dewater system for additional land application had been installed, and that wastewater levels in the existing impoundments were being managed to handle the 25-year/24-hour storm event capacity. The letter acknowledged that Pond #7 was not complete and that a complete permit amendment application could not be submitted.

•       Permit Certification No. COA-931039 was terminated by the EAP on October 5, 2009, due to the facility's failure to meet all structure design, construction, and documentation conditions and its failure to submit a complete permit amendment application.

•       The EAP provided notice of termination of Certification No. COA-931039 by letter dated October 6, 2009. In that letter, the EAP acknowledged that it had received a registration for the Dairy Property as a non-permitted CAFO in accordance with section 81.5 of Regulation 81. The EAP confirmed that the registration will continue in effect as submitted.

**OPINIONS:**

a.      The Dairy Facility currently is not covered under a WQCD CAFO Discharge Permit.

b.      In order for the Dairy Facility to be covered under the CAFO General Discharge Permit, Johnson must submit a new application for permit coverage to WQCD and obtain WQCD certification of permit coverage.

c.      In order to obtain CAFO General Discharge Permit coverage for the current production area configuration, the new permit application must include as-built drawings

Chris Hawkins
June 3, 2010
Page 11 of 18

and a liner certification for Pond #7.

        d.      The Heifer Facility currently is not covered under a WQCD CAFO Discharge Permit.

**3.**      **Weld County Permitted Use by Special Review**

- The Dairy Facility is located in the Weld County Agricultural zone district.

- The Heifer Facility is located in the Weld County Agricultural zone district.

- In the Agricultural zone district, livestock confinement operations and animal waste recycling or processing facilities are Uses by Special Review.

*DAIRY FACILITY*

- Livestock confinement operations and facilities were permitted as Uses by Special Review at the Dairy Facility by a plat for USR 1282 Recorded at Reception No. 2849486 on May 18, 2001. USR 1282 authorized livestock confinement operations for 11,240 head of cattle.

- USR-1282 was amended by the plat approved by the Weld County Commissioners on November 3, 2003 and Recorded at Reception No. 3124257 on November 6, 2003. ("AMUSR-1282"). AMUSR-1282 allowed a dairy for up to 2000 head of cattle (total of 11,240 head of cattle). AMUSR-1282 also provided for one new pond, to be constructed, maintained and operated in accordance with the CAFO Control Regulations.

- Conditions for recording the plat for AMUSR-1282 included, among other obligations, demonstrated compliance with Confined Animal Feeding Operations ("CAFO") Control Regulations (Regulation 81), including control of stormwater from a 25-year, 24-hour storm event; meeting retention structure seepage rates; the ability to manage, dispose and/or land apply manure and wastewater at agronomic rates in accordance with CAFO Control Regulations; adequate measures to prevent discharges except as allowed by the CAFO Control Regulations; a description of records to be maintained pursuant to CAFO Control Regulations; and evidence that the site is graded to convey stormwater or other waste waters to retention facilities. Additional conditions of recording included submission of a Manure and Waste Management Plan to CDPHE and approval of Dust Abatement, Fly Control, Odor Control and Pest Control Plans by the Weld County Department of Public Health and Environment.

- Development Standards imposed on AMUSR-1282 included manure storage surface area protective of state water with no degradation or impact to state waters in violation of the CDPHE CAFO Control Regulations (the Development Standards cite 5 CCR 1002-19 as

Chris Hawkins
June 3, 2010
Page 12 of 18


the CAFO Control Regulations, however, at the time, 5 CCR 1002-19 were the Cherry Creek Reservoir Control Regulations – the CAFO Control Regulations were at 5 CCR 1002-81 - the citation clearly was erroneous), compliance with the CAFO Control Regulations prior to final county approval; compliance with Weld County Livestock Confinement Standards; storage and final removal of liquid and solid wastes in a manner that protects against contamination of surface and ground water contamination; no permanent disposal of solid wastes as defined in the CDPHE Regulations Pertaining to Solid Waste Disposal Sites and Facilities; odor controls consistent with CDPHE Air Pollution Control Regulation 2 and no run-off discharge except as allowed by CAFO Control Regulations.

• By Resolution adopted December 20, 2006, the Weld County Commissioners approved the Second Amended Use by Special Review Permit #1282 ("2d AMUSR#1282"). The 2d AMUSR#1282 allowed an additional milk parlor, office/scale house, additional pens, and removal of the 2,000 dairy cattle limit to allow any number of dairy cattle within the 11,240 total cattle limit. Among other obligations, prior to submission of the final plat, the Resolution required documentation from a registered engineer that all wastewater impoundments meet the seepage rate standards of Regulation 81, evidence that a Standard Operating Procedure for sludge and manure removal from impoundments had been approved by WQCD, and inclusion of specified Development Standards on the plat.

• The Resolution approving 2d AMUSR#1282 stated that "[t]he Second Amended Use by Special Review activity shall not occur, nor shall any building or electrical permits be issued on the property, until the Second Amended Use by Special Review plat is ready to be recorded in the office of the Weld County Clerk and Recorder."

• The specified Development Standards for 2d AMUSR#1282 included, among other conditions, obligations to operate in compliance with Regulation 81, maintenance of "CAFO Colorado Discharge Permit coverage" and compliance with Regulation 61; a prohibition on discharges of manure or process wastewater, except as provided in the facility's CAFO Colorado Discharge Permit; compliance with the Notice of Violation/Cease and Desist Order/Clean-up Order Number CO-05104-1 (Oct. 14, 2005); application of manure and wastewater at agronomic rates in accordance with a Nutrient Management Plan or Manure and Wastewater Management Plan; operation in a manner to avoid nuisance conditions; control of dust, pests, flies and odors in accordance with an approved Management Plan for Nuisance; acquisition of a WQCD stormwater discharge permit for construction activities disturbing five or more acres of land; and compliance with the Weld County Livestock Confinement Operation Standards and Livestock Feeding Performance Standards.

• Weld County authorized construction of the new milking parlor prior to submission of the final plat for the 2d AMUSR#1282.

• In conversations with the undersigned, Chris Gathman of the Weld County Planning

Chris Hawkins
June 3, 2010
Page 13 of 18


Department reported that a Mylar of the final plat for the 2d AMUSR#1282 was submitted to Weld County, but the Weld County Planning Department refused to record the plat for failure to meet the conditions precedent to submitting a final plat. Mr. Gathman reported that the Weld County Planning Department considers compliance with the Development Standards conditions precedent to submission of the final plat. CAFO Colorado Discharge Permit coverage is a Development Standard for the 2d AMUSR #1282. Because the CAFO permit certification was suspended in March 2008, Weld County determined that the conditions for accepting the final plat had not been met and returned the Mylar. Mr. Gathman reports that obtaining a CDPHE CAFO Discharge Permit is the only remaining condition that must be met for the County to accept and record the final plat for the 2d AMUSR#1282.

- By Resolution dated August 19, 2009, the Weld County Commissioners approved the Third Amended Use by Special Review Permit #1282 ("3d AMUSR#1282") for the Dairy Facility, subject to conditions.

- The 3d AMUSR#1282 deletes the limitation of 2,000 dairy cattle, clarifying that a total of 11,240 cattle may be placed on the property, without further limitation as to dairy cattle or otherwise, and allows a new stormwater pond and effluent storage, a new sediment basin, a new commodity area and expansion of the compost area.

- The activities authorized by the 3d AMUSR#1282 cannot commence until a Mylar plat for the amendment is ready to be recorded. Prior to providing the plat, the permitee must meet certain development conditions, including, among other conditions, documenting that wastewater impoundments meet seepage rate standards of Regulation 81, that a Standard Operating Procedure for sludge and manure removal as been approved by WQCD pursuant to Regulation 81, the Management Plan for Nuisance Control must be amended to include a commitment for dust control on internal haul roads and the applicant must commit to minimizing stormwater run-on from adjacent property.

- The 3d AMUSR#1282 incorporates Development Standards, which include an obligation to operate in compliance with Regulation 81 and an obligation to "maintain Confined Animal Feeding Operation (CAFO) Colorado Discharge Permit coverage and operate in compliance with Colorado Water Quality Control Commission Regulation Number 61." The Dairy Facility is not allowed to discharge manure or process wastewater except as provided in a CDPHE CAFO Discharge Permit. In addition, manure and wastewater must be land applied at agronomic rates using practices and procedures protective of ground and surface waters, consistent with the Facility's Manure and Wastewater Management Plan, Facility Management Plan or Nutrient Management Plan. Only agricultural stormwater may be discharged from land application areas. Manure storage areas must have a surface that is protective of state waters and must be constructed to minimize seepage or percolation of manure contaminated water. The facility shall not

Chris Hawkins
June 3, 2010
Page 14 of 18

impact or degrade waters of the state in violation of Regulation 81. The facility must operate in compliance with its approved Management Plan for Nuisance Control. Composting must comply with the Solid Waste Disposal Site and Facilities Regulation, Section 14. Also, the facility must comply with Weld County Livestock Confinement and Livestock Feeding Performance standards.

**OPINIONS:**

a.      Land use for the Dairy Facility currently is controlled by AMUSR#1282, except to the extent of additional activities required to satisfy the conditions for final plat approval contained in the Resolution for 2d AMUSR#1282 and in the Resolution for 3d AMUSR#1282 or otherwise approved by Weld County.

b.      Currently, the Dairy Facility may operate with up to 2,000 head of dairy cattle and up to a total of 11,240 head of cattle.

c.      The Dairy Facility may operate under AMUSR#1282 without a CAFO Discharge Permit, but must still comply with Regulation 81.

d.      Johnson maintains a Facility Management Plan pursuant to Regulation 81, as described above, and a Nuisance Control Management Plan, including management plans for dust, odor, insects and rodents, for the Dairy Facility, which, combined, provide management plans for compliance with AMUSR#1282 and with Weld County Code Sections 23-4-350 (Livestock Confinement Operations) and 23-4-710 (Livestock Feeding Performance Standards).

e.      The Dairy Facility cannot increase the total number of dairy cattle to 11,240 until acceptance by Weld County of the final Mylar plat for the 2d AMUSR#1282.

f.      The Dairy Facility currently is not in compliance with the Weld County Zoning Code because the production area exceeds the area permitted by AMUSR#1282.

g.      To come into compliance with the Weld County Zoning Code, Johnson must either decrease the production area to that allowed by AMUSR#1282 or obtain approval of the final Mylar plats for the 2d AMUSR#1282 and the 3d AMUSR#1282.

h.      Based on conversations with the Weld County Planning Department, coverage of the Dairy Facility under a CAFO Discharge Permit is the final condition required by Weld County for acceptance of the final Mylar plat for 2d AMUSR#1282, which would allow operation with 11,240 dairy cattle.

g.      The 2d AMUSR#1282 does not permit the full extent of the current compost area, a current sediment basin, a current commodity area and Pond #7. Operation of this full

Chris Hawkins
June 3, 2010
Page 15 of 18

area requires Weld County acceptance of the final Mylar plat for the 3d AMUSR#1282.

      h.     Johnson must satisfy the following conditions for Weld County acceptance of the final Mylar plat for the 3d AMUSR#1282:

           i.     Weld County approval of a landscape/screening plan;

           ii.     Weld County approval of a lighting plan;

           iii.     Johnson must work with the Weld County Department of Public Works to minimize access;

           iv.     Installation of a fire hydrant at the Dairy Facility;

           v.     Provide evidence that a Standard Operating Procedure for sludge and manure removal has been submitted and approved pursuant to Regulation 81;

           vi.     Amend the Management Plans for Nuisance Control to include dust control on haul roads;

           vii.     Commit to ongoing efforts to minimize stormwater run-on from adjacent property;

           viii.     Submit an agreement with the property's mineral owners and operators stipulating that the site design adequately incorporates oil and gas activities;

           ix.     Execute an Improvements Agreement;

           x.     Provide documentation from a Colorado licensed professional engineer that all wastewater impoundments meet Regulation 81 seepage standards; and

           xi.     Amend the plat to include the Development Standards, county road right-of-ways, the lighting plan, the landscape/screening plan and any approved signs.

      i.     Pond #7 has been constructed without a WQCD construction stormwater permit.  The consequences of that action are uncertain.  WQCD construction stormwater permits are required for discharges of storm water to state waters from construction sites larger than one acre.  The Pond #7 construction site is larger than one acre, however there has been no direct discharge of stormwater from the construction site, which captures stormwater and is protected by a berm that diverts stormwater run-on away from the

Chris Hawkins
June 3, 2010
Page 16 of 18

construction area. Courts outside of Colorado recently have held that if there is no discharge to regulated waters, the Federal Clean Water Act provides no authority to require a discharge permit, including specifically a construction stormwater discharge permit. *Service Oil, Inc. v. U.S. E.P.A.*, 590 F.3d 545, 550 (8th Cir. 2009); *see also Waterkeeper Alliance, Inc. v. U.S. E.P.A.,* , 504-06 (2nd Cir. 2005)(CAFO discharge permits). Courts have not yet decided this issue with respect to the Colorado Water Quality Control Act and the Colorado Discharge Permit System. Therefore, the consequences of constructing Pond #7 without a construction stormwater permit are not certain. Stormwater has been pumped from Pond #7 to Pond #5 and subsequently land applied along with wastewater contained in Pond #5. Whether that constituted a discharge of pollutants to state waters also is not certain.

i.        The Development Standards for the 2d AMUSR#1282 and the 3d AMUSR#1282 require a Construction Storm Water Permit for any construction activity disturbing more than five acres of land. Pond #7 was not constructed in compliance with these Development Standards, but all earth moving activities at the construction site have been completed. The effect of this action on final approval of the 2d AMUSR#1282 and 3d AMUSR#1282 Mylar plats is not certain.

### HEIFER FACILITY

•        Use by Special Review 480:81:26 for the Schneider Feed Lot was recorded February 12, 1982 at Book No. 0960, Reception No. 01882948, Weld County Clerk and Recorder. USR 480:81:26 makes up a portion of the Heifer Facility. USR 480:81:26 allows for an average stock population of 3,000 head. The Development Standards for this permit state, among other things, that "[s]tock-pen runoff should and will be controlled on the farm of which this feedlot is a part, under normal conditions."

•        Use by Special Review for a Livestock Confinement Operation for Cattle was approved for a portion of the Heifer Facility by Resolution of the County Commissioners of Weld County on November 17, 1982 ("USR 529:82:44"). USR 529:82:44 was recorded on January 20, 1983 at Book 0987, Reception No. 01914983, Weld County Clerk and Recorder. USR 529:82:44 did not amend or replace USR 480:81:26, but was a new USR for adjacent land to the east and extending north. Among other requirements, USR 529:82:44 included the following Development Standards:

        •        The total stock population is ten thousand (10,000) head;

        •        No runoff from the operation to surrounding property is allowed without permission of the affected landowners; and

        •        Runoff from operations to the #2 Ditch or the Lucas Lateral Ditch is not allowed without a National Pollution Discharge Elimination System Permit.

Chris Hawkins
June 3, 2010
Page 17 of 18

**OPINIONS:**

a.      Johnson may operate the Heifer Facility with 10,000 head of cattle.

b.      Johnson maintains a Facility Management Plan pursuant to Regulation 81, as described above, and a Nuisance Control Management Plan, including management plans for dust, odor, insects and rodents, for the Heifer Facility, which, combined, provide management plans for compliance with USR 480:81:26 and USR-529:82:44 and with Weld County Code Sections 23-4-350 (Livestock Confinement Operations) and 23-4-710 (Livestock Feeding Performance Standards).

c.      We are not aware of any current violation of USR 480:81:26 or USR 529:82:44.

**4.      Pending or Threatened Action**

•      To our knowledge, there is no current action, proceeding or governmental investigation pending, or overtly threatened in writing, against Johnson that alleges violation of Regulation 61, Regulation 81 or the Colorado Water Quality Control Act.

•      The 3d AMUSR#1282 was sought due to existing land uses at the Dairy Facility that exceed the uses permitted by AMUSR#1282 and that would be permitted by the 2d AMUSR#1282.

•      The Resolutions approving the 2d AMUSR#1282 and the 3d AMUSR#1282 required completion of the conditions for recording the plats, and submission of the Mylar plat within 180 days after the Resolutions. Those deadlines have passed and, according to the Weld County Planning Department, have not been completed. Based on communications with the Weld County Planning Department, the County may request that the applicant appear before the Board of County Commissioners to discuss status of the 2dAMUSR#1282 and the 3d AMUSR#1282 and to determine whether an extension is appropriate or whether a show cause hearing should be held.   At this time, however, Weld County has taken no action on these matters.

The opinions expressed above are subject to the customary exclusions, including the following qualifications and limitations:

The opinions contained in this letter are subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law). In addition, the enforcement of any rights by any person or entity may in all cases be subject to concepts of materiality, reasonableness, good faith, and fair dealing.

We express no opinion as to any matter not expressly set forth herein.

Chris Hawkins
June 3, 2010
Page 18 of 18


     This opinion only speaks to Johnson as to the matters addressed herein as of the date hereof.  We have no duty to update our opinion as laws or facts may change after the date hereof, and we make no representation regarding the sufficiency of this opinion for your purposes.

     This opinion is solely for the benefit of addressee hereof.  This opinion may not be relied upon in any manner by any other person or entity and may not be disclosed, quoted, filed with a governmental agency or otherwise referred to without our prior written consent. The addressee hereof may rely upon this opinion only in connection with the transactions for which this opinion is provided.

                    Sincerely,



                    BURNS, FIGA & WILL, P.C.



SAC/ck
cc:    Mr. John Johnson
       John O'Brien, Esq.
       Lisa Decker, Esq.